USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/26/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

LENORA BROMFIELD,

                Plaintiff,   :  16 Civ. 10047 (ALC)(HBP)

  -against-   :  OPINION
      AND ORDER
BRONX LEBANON SPECIAL CARE
CENTER, INC., et al.,

                Defendants.

-----------------------------------X

        PITMAN, United States Magistrate Judge:

I. Introduction

        Plaintiff moves for an Order pursuant to Rule 15 of the Federal Rules of Civil Procedure granting leave to file an amended complaint (Notice of Motion, dated Feb. 25, 2019 (Docket Item ("D.I.") 82)). For the reasons set forth below, the motion is denied.

II. Background

    A. Facts

        This is an employment discrimination/retaliation action. Plaintiff was employed by defendant Bronx Lebanon Special Care Center, Inc. ("Bronx Lebanon") for 24 years as a

Certified Nursing Assistant ("CNA") (Proposed Amended Complaint, filed Feb. 25, 2019 (D.I. 82-1) ("PAC") ¶¶ 17-18). Plaintiff alleges that, prior to April 2016, defendant Maria Collura, Director of Human Resources at Bronx Lebanon, suspended her "without cause on numerous occasions," but that all of these suspensions were "rescinded due to lack of evidence" (PAC ¶¶ 12, 23-24). Plaintiff alleges that she complained to defendant Olive Brown, the Chief Nursing Officer, about "substandard care" afforded to patients and a pattern of short-staffing on her floor (PAC ¶¶ 25-26). Plaintiff requested that Brown transfer her to another unit at Bronx Lebanon, but Brown refused and allegedly "command[ed] [p]laintiff to go back to work [like] a 17th century slave" (PAC ¶¶ 27-28).

Plaintiff was assigned to care for a patient ("Jane Doe") in room 608A from 4:00 p.m. on March 19, 2016 to 12:30 a.m. on March 20, 2016 (PAC ¶ 54). According to plaintiff, Jane Doe had no observable injuries at the end of plaintiff's shift (PAC ¶¶ 54-55). On March 20, 2016, Janice Hamilton, another CNA at Bronx Lebanon, was assigned to care for Jane Doe from 12:00 a.m. to 8:30 a.m. (PAC ¶¶ 36-37, 39). In a report dated March 25, 2016, Janice Hamilton reported no noticeable injuries to Jane Doe at the end of her March 20, 2016 shift (PAC ¶ 47). At 11:30 a.m.

on March 20, 2016, CNA Melissa Santos reported seeing an injury to Jane Doe's toe (PAC ¶ 33).

On April 5, 2016, defendants Collura, Brown and Yvonne Wedderburn, the Assistant Director of Nursing, interviewed CNA Grace Baptiste (PAC ¶¶ 102, 109). Collura asked Baptiste what she knew about the injury to Jane Doe, and Baptiste responded that when she heard about Jane Doe's injury, she believed Jane Doe had been injured by plaintiff[1] moving Jane Doe into her bed without assistance from another CNA (PAC ¶¶ 103-04). Collura asked Baptiste if she had ever seen plaintiff move a resident without assistance in the same way, and Baptiste replied that she had seen plaintiff move Jane Doe without assistance on prior occasions (PAC ¶ 105). Plaintiff denies moving Jane Doe or any other patient improperly and claims that, prior to April 5, 2016, no Bronx Lebanon employee had ever reported her or disciplined her for doing so (PAC ¶¶ 56, 106-07).

Collura, Brown and Wedderburn met with plaintiff and plaintiff's union delegate on April 5, 2016; defendants suspended plaintiff without pay, pending the investigation of an alleged

---

[1] The description of this interview in the PAC alleges that Baptiste accused a "Ms. Tillett" of injuring Jane Doe (PAC ¶¶ 104-05). Although the name "Ms. Tillett" does not appear anywhere else in the PAC and plaintiff fails to clarify this issue, I assume, based on the context and subsequent factual allegations, that plaintiff is "Ms. Tillett."

incident "which [d]efendant Collura claimed occurred on March 17 or 18 of 2016" (PAC ¶¶ 58-60).

When plaintiff returned to work on April 19, 2016, she sent a letter to Peter Kennedy, the Assistant Vice-President of Bronx Lebanon, alleging that she had been suspended in retaliation for her prior complaints concerning substandard patient care and insufficient staffing levels (PAC ¶ 64). Later that same day, plaintiff and her union delegate met with Collura, Brown and Wedderburn again, and Collura told plaintiff she could resign or she would be fired (PAC ¶¶ 65-66, 69). Plaintiff claims that she refused to resign and that a letter of resignation produced by defendants is a forgery (PAC ¶¶ 72-76).

According to plaintiff, defendants' investigation into Jane Doe's injury ignored the CNAs who cared for Jane Doe after plaintiff's shifts and did not result in the suspension of the other CNAs assigned to care for Jane Doe during the relevant period (PAC ¶¶ 61, 79, 84).

B. Procedural History

Plaintiff commenced this action on December 28, 2016 (Compl., dated Dec. 28, 2016 (D.I. 2)). After a series of extensions, I set the close of fact discovery at October 19, 2018 (Order, dated Sept. 12, 2018 (D.I. 64)) and the deadline for

4

summary judgment motions at February 22, 2019 (Order, dated Jan. 30, 2019 (D.I. 77)). On February 7, 2019, pursuant to Judge Carter's Individual Rules of Practice, defendants requested a pre-motion conference in anticipation of their motion for summary judgment (Letter Mot. for Conf., dated Feb. 7, 2019 (D.I. 78)). Judge Carter denied defendants' request for a pre-motion conference without prejudice until the instant motion is decided (Order, dated Mar. 20, 2019 (D.I. 87).

### C. Proposed Amended Complaint

Plaintiff's PAC provides more detail than her original complaint with respect to which CNAs were assigned to care for Jane Doe and their respective shifts (PAC ¶¶ 33-39, 87-95), as well as defendants' investigation into Jane Doe's injury and the circumstances of plaintiff's subsequent termination (PAC ¶¶ 47-52, 58-61, 64-77, 102-15). The PAC also adds Grace Baptiste as a defendant (PAC ¶ 15). Finally, the PAC explicitly adds allegations of race discrimination and the denial of equal rights in violation of 42 U.S.C. § 1981 (PAC ¶¶ 123-131).

III. <u>Analysis</u>

    A. <u>Applicable Legal Standards</u>

The standards applicable to a motion to amend a pleading are well settled and require only brief review. Leave to amend a pleading should be freely granted when justice so requires. Fed.R.Civ.P. 15(a); <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Medina v. Tremor Video, Inc.</u>, 640 F. App'x 45, 47 (2d Cir. 2016) (summary order); <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 190 (2d Cir. 2015); <u>Dluhos v. Floating & Abandoned Vessel, Known as "New York"</u>, 162 F.3d 63, 69 (2d Cir. 1998); <u>Gumer v. Shearson, Hammill & Co.</u>, 516 F.2d 283, 287 (2d Cir. 1974). This "permissive standard . . . is consistent with [the] strong preference for resolving disputes on the merits." <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, <u>supra</u>, 797 F.3d at 190 (internal quotation marks omitted). However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (<u>per curiam</u>), <u>citing</u> <u>Foman v. Davis</u>, <u>supra</u>, 371 U.S. at 182; <u>accord</u> <u>American Home Assurance Co. v. Jacky Maeder (Hong</u>

6

Kong) Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.); see also Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir. 1997) (summary order), citing Foman v. Davis, supra, 371 U.S. at 182.

A court may "deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant;" "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); accord Hernandez v. BMNY Contracting Corp., 17 Civ. 9375 (GBD), 2019 WL 418498 at *1 (S.D.N.Y. Jan. 17, 2019) (Daniels, D.J.) (court may deny motion to amend "when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay"); Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (Nathan, D.J.). "'[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993), quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983). "'Mere delay, however, absent a showing of bad faith or

undue prejudice, does not provide a basis for a district court to deny the right to amend.'" Ruotolo v. City of New York, 514 F.3d 184, 191, (2d Cir. 2008), quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); accord Pasternack v. Shrader, 863 F.3d 162, 174 (2d Cir. 2017) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

"Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725-26 (2d Cir. 2010), quoting Block v. First Blood Assocs., supra, 988 F.2d at 350. Courts are "particularly likely to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment." Werking v. Andrews, 526 F. App'x 94, 96 (2d Cir. 2013) (summary order) (collecting cases).

B. Application of the
   Foregoing Principles

Plaintiff made the present motion more than two years after filing her initial complaint, more than four months after

8

the close of fact discovery and after the deadline to file dispositive motions. Because plaintiff has offered no satisfactory explanation for her inordinate delay and because amendment at this time would unduly prejudice defendants, plaintiff's motion is denied.

Plaintiff argues that leave to amend is warranted because the facts set forth in the PAC reflect evidence obtained in discovery. Assuming the truth of plaintiff's claim that the PAC includes "newly discovered facts based on evidence obtain [sic] from discovery," (Memorandum of Law in Support of Motion for Leave to File an Amended Complaint, dated Feb. 25, 2019 (D.I. 84) ("Plaintiff's Mem.") at 1), plaintiff offers no explanation for her failure to file her motion until four months after the close of fact discovery. Although courts afford leniency to pro se litigants with respect to the procedural formalities of litigation, see, e.g., Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (collecting cases), "'the indulgence afforded to' pro se litigants is not limitless." Baptista v. Hartford Bd. of Educ., 427 F. App'x 39, 43 (2d Cir. 2011) (summary order), quoting Lucas v. Miles, 84 F.3d 532, 538 (2d Cir. 1996); accord Ndremizara v. Swiss Re America Holding Corp., 93 F. Supp. 3d 301, 309-310 (S.D.N.Y. 2015) (Karas, D.J.) ("[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from

9

compliance with relevant rules of procedural and substantive law."). By failing to account for her four-month delay in filing the current motion, plaintiff has exceeded any reasonable leeway afforded by virtue of her pro se status.

Moreover, plaintiff's filing after the close of discovery and defendants' statement of intent to move for summary judgment would result in undue prejudice to defendants. In Werking v. Andrews, supra, 526 F. App'x at 96, the plaintiff "inexplicably failed to file his motion to amend for . . . two months" after learning the relevant facts upon which his motion to amend was based, during which time discovery closed and the defendants moved for summary judgment. The plaintiff's proposed amended complaint would have resulted in the alteration of his legal theory, the transformation of the case into a class action, the assertion of a Monell claim and the addition of a new plaintiff and a new defendant. Werking v. Andrews, supra, 526 F. App'x at 96. The Second Circuit affirmed the denial of the motion to amend, stating that

> [e]ven one of these changes, let alone all of them in conjunction, would have required substantial additional discovery after the parties had just completed the discovery process. In other words, the impact of the proposed new claim on the existing proceedings would have been substantial. Its assertion would undoubtedly have required the defendants to expend significant additional resources . . . and would have significantly delayed the resolution of the dispute. The delay was

10

>especially prejudicial given the fact the discovery had been completed and [the defendants] had already filed a motion for summary judgment.

Werking v. Andrews, supra, 526 F. App'x at 96-97 (emphasis and alterations in original) (internal quotation marks and citations omitted).

Similarly, in Morency v. NYU Langone Med. Ctr. Hosp., 15 Civ. 9142, 2017 WL 1536057 at *1, *4 (S.D.N.Y. Apr. 17, 2017) (Buchwald, D.J.), the plaintiff moved to amend her complaint a year after it was initially filed and after the close of discovery, seeking to add a state-law whistleblower claim to her claims of discrimination, retaliation and wrongful termination. The Honorable Naomi Reice Buchwald, United States District Judge, found that, even if the plaintiff's proposed amendment were not futile, the required reopening of discovery concerning the plaintiff's new theories and the re-deposition of the plaintiff and her supervisors would unduly prejudice the defendants. Morency v. NYU Langone Med. Ctr. Hosp., supra, 2017 WL 1536057 at *4.

In this case, plaintiff seeks to add a new theory of liability and a new defendant after discovery has closed and defendants' initiation of summary judgment proceedings. Plaintiff's proposed amendment would require the reopening of discovery, which has been closed since October 2018, and the re-deposi-

tion of plaintiff, the individual defendants and perhaps other witnesses as well. The resulting expenditure and delay of the resolution of this matter would unduly prejudice defendants, and plaintiff has offered no compelling explanation for her delay.

Although the PAC sets forth substantial detail regarding the CNAs who were assigned to care for Jane Doe, defendants' investigation into Jane Doe's injury and the circumstances of plaintiff's subsequent termination, none of these additional facts support plaintiff's new claim of racial discrimination. Again, assuming the truth of plaintiff's allegations that defendants conducted a "sham" investigation (PAC ¶ 83) or unjustly terminated plaintiff for acts she did not commit, such facts do not give rise to an inference of race discrimination. At most, plaintiff's allegations set forth a potential case of unfair treatment by defendants. However, "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable." Nakis v. Potter, 01 Civ. 10047 (HBP), 2004 WL 2903718 at *20 (S.D.N.Y. Dec. 15, 2004) (Pitman, M.J.), citing Brennan v. Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); accord Assue v. UPS, Inc., 16 Civ. 7629 (CS), 2018 WL 3849843 at *12 (S.D.N.Y. Aug. 13, 2018) (Seibel, D.J.); Sethi v. Narod, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014).

Furthermore, the few additional facts that might support plaintiff's proposed claim of racial discrimination must have been known to plaintiff at the time she filed her original complaint more than two years ago. Plaintiff alleges that Melissa Santos, another CNA assigned to the injured patient, is a white Hispanic female (PAC ¶ 49, 82, 125). Plaintiff also alleges that defendant Collura is a white female (PAC ¶ 12, 23, 101, 126). Presumably, plaintiff includes the racial or ethnic backgrounds of these individuals because Santos, a white Hispanic female, was not suspended, while Collura, a white female, suspended and ultimately terminated plaintiff, who is a black female. Notably, plaintiff does not identify the racial or ethnic backgrounds of any other defendants or non-party witnesses who are named in the PAC.[2] In any event, plaintiff must have known the racial or ethnic backgrounds of her former colleagues at the time she filed her original complaint, and her inclusion of a select few of these details in the PAC does not justify her untimeliness.

---

[2] According to the unsworn representations in defendants' letter in response to plaintiff's current motion, "Dr. Brown and Ms. Wedderburn, both of whom participated in the determination to end Plaintiff's employment along with Ms. Collura, are both black" (Defendants' Letter Response in Opposition to Motion, dated Mar. 1, 2019 (D.I. 85) at 1).

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion for leave to file an amended complaint is denied. The Clerk of the Court is respectfully requested to mark Docket Item 82 closed.

Dated: New York, New York
April 25, 2019

SO ORDERED

*[signature]*

HENRY PITMAN
United States Magistrate Judge

Copy mailed to:

Ms. Lenora Bromfield
66 Washington Terrace
Bridgeport, Connecticut 06604

Copy transmitted to:

Counsel for Defendants