UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LENORA BROMFIELD,

                              Plaintiff,

        against

BRONX LEBANON SPECIAL CARE CENTER, INC., et
al.,

                              Defendants.

CIVIL ACTION NO.: 16 Civ. 10047 (ALC) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.   INTRODUCTION

By motion dated March 3, 2020, Plaintiff Lenora Bromfield submits her fourth request for
the appointment of pro bono counsel.  (ECF No. 128 (the "Fourth Request")).  For the reasons
stated below, Bromfield's application for pro bono counsel is GRANTED.

## II.   BACKGROUND

### A.  Procedural Background

On December 28, 2016, Bromfield commenced this action alleging claims for employment
discrimination and retaliation.  (ECF No. 2).  On August 14, 2017, Defendants answered the
Complaint.  (ECF No. 23).  Bromfield requested pro bono counsel on July 6, 2017 (ECF No. 20),
and again on February 27, 2018 (ECF No. 39).  On March 30, 2018, the Honorable Andrew L.
Carter, Jr. denied her first request "without any consideration of the merits to the second
application."  (ECF No. 42).  On September 25, 2018, the Honorable Henry B. Pitman denied
Bromfield's second request without prejudice to renewal, specifying that the "renewed motion
should explain why the case has sufficient merit to warrant the appointment of counsel."  (ECF

No. 65 at 5 (the "Second Denial Order")).   On October 8, 2018, Bromfield moved for reconsideration of the Second Denial Order.  (ECF Nos. 68–69, 71).  On November 2, 2018, Judge Pitman issued an order denying Bromfield's request for reconsideration, but granting <u>pro bono</u> counsel solely for purposes of settlement negotiations, if the Clerk of Court was able to locate counsel for Bromfield.  (ECF No. 75 at 2).  On December 12, 2018, four individuals from Seton Hall University School of Law's Conflict Management Program filed a notice of limited appearance as <u>pro bono</u> counsel for Bromfield.   (ECF No. 76).   On January 28, 2019, those individuals represented Bromfield at an unsuccessful settlement conference.

On February 7, 2019, Defendants requested a pre-motion conference with respect to their anticipated motion for summary judgment.  (ECF No. 78).  On February 25, 2019, Bromfield moved to file an amended complaint, which Defendants opposed.  (ECF Nos. 82–86).  On March 20, 2019, Judge Carter granted Bromfield leave to file an amended complaint and granted Defendants leave to re-file their request for leave to file a motion for summary judgment once Bromfield's motion to amend was decided.  (ECF No. 87).  On April 26, 2019, Judge Pitman denied Bromfield's motion to amend her Complaint.  (ECF No. 89 (the "Amendment Order")).  On May 9 and 24, 2019 Bromfield filed a motion for reconsideration of the Amendment Order.  (ECF Nos. 92–96).  On May 30, 2019, Judge Pitman denied her motion for reconsideration.  (ECF No. 97 (the "Reconsideration Order")).  The parties then briefed Defendants' motion for summary judgment. (ECF Nos. 98, 100, 108, 113–18).

Bromfield filed a notice of appeal and an amended notice of appeal of the Reconsideration Order.  (ECF Nos. 102, 104–05).  On October 9, 2019, the Second Circuit denied her appeal for lack of jurisdiction.  (ECF No. 123).  On August 5, 2019, construing the notice of

appeal as a motion for reconsideration of the Reconsideration Order, Judge Carter set a briefing schedule .  (ECF No. 110).  On October 3, 2019, this case was reassigned to the undersigned to supervise general pretrial matters.

On January 3, 2020, Judge Carter granted Bromfield leave to amend her Complaint and denied Defendants' motion for summary judgment as moot.  (ECF No. 124).  On February 12, 2020, Bromfield again requested pro bono counsel, which this Court denied without prejudice to renewal after Bromfield filed her amended Complaint.  (ECF Nos. 125–26).  On February 26, 2020, Bromfield filed her amended Complaint (the "Amended Complaint") (ECF No. 127), and on March 3, 2020, Bromfield filed the Fourth Request.  (ECF No. 128).

### B.  Factual Background From the Amended Complaint

Bromfield alleges that she was employed by Defendant Bronx Lebanon Special Care Center, Inc. ("Bronx Lebanon") for 24 years as a Certified Nursing Assistant ("CNA"), falsely charged with work place misconduct, and forced to resign.  (ECF No. 127 ¶¶ 6, 22–23).  According to Bromfield, Defendants' conduct violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967.  (Id. ¶ 2).  Bromfield alleges that Defendant Maria Collura discriminated against her because Bromfield is female, Black, and was over the age of 40 at the time of her constructive discharge.  (Id. ¶¶ 1, 4, 6, 43).

Bromfield alleges that because she is a Black female over 40, Defendants fraudulently accused her of injuring a resident-patient on March 17 or 18, 2016 (the "March 2016 Incident").  (ECF No. 127 ¶ 4).  Bromfield alleges the resident-patient was injured on March 20, 2016, but Bromfield was accused of causing the injury on March 17 or 18, 2016.  (Id.)  Defendants covered up the actual facts underlying the injury.  (Id. ¶ 5).  As a result of the March 2016 Incident,

Defendants subjugated Bromfield to a hostile work environment, treated her differently, and harassed her.  (Id. ¶ 6).  Following the March 2016 Incident, she was suspended for nearly two weeks and told that she could resign and keep her benefits or be fired on the spot.  (Id. ¶¶ 69–74, 120).  Bromfield reluctantly decided on April 19, 2016 to resign.  (Id. at 74).

Bromfield alleges that a hostile work environment existed before and after the March 2016 Incident because of Collura's racial animus against her, which manifested as suspensions without cause that were rescinded due to a lack of evidence.  (ECF No. 127 ¶¶ 29, 31–34, 56–57, 59).

Bromfield alleges that she was treated differently than comparators.  After the March 2016 Incident, Collura suspended Bromfield pending an investigation into the incident, but not any other CNAs who were similarly situated and assigned to work in the same room in which the incident occurred around the same time.  (ECF No. 127 ¶¶ 62, 87, 89, 92, 118).  Bromfield alleges that on March 19, 2016, Defendant Grace Baptiste worked in the same room and with the same resident-patients as Bromfield, but the other Defendants helped Baptiste fabricate a lie regarding the March 2016 Incident.  (Id. ¶¶ 152–56).  In addition, non-party fact witnesses, CNAs Janice Hamilton and Melissa Santos, also worked in the same room where the March 2016 Incident occurred around the same dates, but were not treated like Bromfield.  (Id. at 25).  Bromfield alleges that Defendants sought to blame her for the March 2016 Incident even though she had no involvement and they do not know who worked the shift on which the resident-patient was injured.  (Id. ¶ 92–95).

Bromfield alleges that during discovery in this ligation she found out that the March 2016 Incident was indeed reported to the Defendants by Santos, who reported that the resident-

patient injured during the March 2016 incident was injured on March 20, 2016 as Bromfield claims, not March 17 or 18, 2016 as Defendants claim.  (ECF No. 127 ¶ 77).

Bromfield alleges that before her termination, Collura, Baptiste, and Defendant Olive Brown retaliated against her for reporting that Baptiste slept during work hours, because Brown and Baptiste are "very close friends."  (ECF No. 127 ¶¶ 44–47).  In addition, Bromfield alleges that she was retaliated against for making written and verbal complaints to Brown regarding substandard care, short staffing, and other nurses' failures to provide care to resident-patients at Bronx Lebanon.  (Id. ¶¶ 48–50).  Bromfield alleges she was also retaliated against for requesting a transfer out of her unit so that she would not work with Baptiste.  (Id. ¶ 50).  Bromfield alleges that after she complained of substandard care and lack of adequate staffing, Brown retaliated with comments such as commanding Bromfield "to go back to work as though [Bromfield was] a 17th century slave in America."  (Id. ¶ 53).  Despite her protestations, Bromfield was forced to continue working with Baptiste and Brown.  (Id. ¶¶ 53, 55).

Bromfield alleges that Collura, Brown, and Defendant Yvonne Weatherburn, as "policy makers and managers," acted under the authority of Bronx Lebanon, which is liable for Collura, Brown, Weatherburn, and Baptiste's conduct and omissions under "the doctrine of Respondent Superior."  (ECF No. 127 ¶¶ 164, 168).

### III.   LEGAL STANDARDS

Pursuant to Supreme Court and Second Circuit precedent, the Court must liberally construe pro se pleadings.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009); Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474–75 (2d Cir. 2006).

Litigants unable to pay for counsel do not have a constitutional right to counsel in civil actions.  Davila v. Doar, No. 07 Civ. 5767 (SHS) (DF), 2008 WL 4695004, at *2 (S.D.N.Y. Oct. 22, 2008).  The Court may grant pro bono counsel to a person who cannot afford one if her "'position seems likely to be one of substance.'"  Id. (quoting Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997)).

The Court must consider "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel."  Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989); see Hodge v. Police Officers, 802 F.2d 58, 60–62 (2d Cir. 1986) (the Court should consider the litigant's ability to investigate the facts, need for cross-examination, complexity of the issues, and any special reason why appointment of counsel would more likely lead to a just determination).   Of these, "[t]he factor which command[s] the most attention [is] . . . the merits."  Cooper, 877 F.2d at 172.  As noted fifteen years ago by the Court of Appeals:

> Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention. Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent.

Cooper, 877 F.2d at 174.

The Second Circuit has stated that "counsel is often unwarranted where the [pro se litigant's] chances of success are extremely slim, and advised that a district judge should determine whether the pro se litigant's position seems likely to be of substance, or showed some chance of success."  Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204 (2d Cir. 2003)

(internal citation omitted).  It is important that "[pro se] litigants seeking appointed counsel []
first pass the test of likely merit."  (Id.) (internal citation omitted).

Although the Court should not appoint counsel "indiscriminately," a plaintiff need not
demonstrate that her claims would survive a motion to dismiss or for summary judgment, but
need only satisfy a "threshold showing of merit."  Hendricks, 114 F.3d at 393–94.

## IV.   DISCUSSION

Bromfield declares that at the commencement of this litigation she sought assistance
from five different law firms, but did not have the money to retain representation.  (ECF No. 128
at 2).  Based on her declaration, under penalty of perjury, and her four applications for pro bono
counsel, the Court has a sufficient basis on which to conclude that she lacks the financial
resources to retain counsel and has diligently sought counsel on her own.

The Court denied Bromfield's second application for pro bono counsel with leave to
renew because there were "serious issues with the case."  (ECF No. 65 at 3).  Bromfield did not
allege "comments by defendants or others suggesting animus against any members of a
protected class and she [did] not cite with specificity any comparators who were treated more
favorably than she was," leaving her Complaint lacking facts to support an "inference of illegal
discrimination."  (Id. at 3–4).  In addition, her retaliation claim lacked proof of a protected activity.
See Arroyo-Horne v. City of New York, No. 16 Civ. 3857 (MKB) 2018 WL 4259866 at *15 (E.D.N.Y.
Sept. 5, 2018) ("Title VII bars retaliation by an employer against an employee because the
employee 'has opposed any practice made an unlawful employment practice' under Title VII.")
(quoting 42 U.S.C. § 2000e-(3)(a)); see also Rojas v. Roman Catholic Diocese of Rochester, 660
F.3d 98, 108 (2d Cir. 2011) (protected activity is usually a complaint against illegal discriminatory

conduct prohibited by Title VII); see also Weixel v. Bd. Of Educ., 287 F.3d 138, 148 (2d Cir. 2002) (retaliation claim under Title VII requires proof that plaintiff engaged in "protected activity"). Bromfield only claimed retaliation over complaints of patient mistreatment, which is not protected under Title VII.  (ECF No. 65 at 4–5).

The Court denied Bromfield's third application with leave to renew after filing the Amended Complaint because she asserted merely "that she requires pro bono counsel because she does not understand the terms used by the Court, does not have money to retain an attorney, and was forced to resign against her will."  (ECF No. 126 at 2).  The Court told her to include in her renewed application a showing that her Amended Complaint was likely meritorious.  (Id.)

Although, in her Fourth Request, Bromfield's arguments once again fail to meet the merit standard, her Amended Complaint, liberally construed, pleads claims that meet the merits threshold.  In the Fourth Request, she requests pro bono counsel because she was illegally and wrongfully discharged from her employment with Bronx Lebanon after 24 years of service, although she provides no facts tying her discharge to Title VII.  (ECF No. 128 at 1).  Likewise, the Amended Complaint provides little support for her retaliation claims.  (See ECF No. 127).  Her allegations of retaliation for reporting that Baptiste slept during work hours and for her complaints regarding substandard care fail for the same reasons they did in 2018, lacking proof of protected activity.  (Id. ¶¶ 44–50).  The activities for which she claims retaliation (reporting poor nursing skills, mistreatment of patients, and requesting a transfer) are not protected under Title VII.  (Id. ¶¶ 44–50, 53).

In her Amended Complaint, however, Bromfield has pled that she belongs to a protected class, has suffered an adverse employment action because of illegal discriminatory animus, and

suffered specific instances of that animus and adverse action.  See Fisher v. Vassar College, 114 F.3d 1332, 1335–37 (2d Cir. 1997) (en banc), cert. denied, 522 U.S. 1075 (1998).  Bromfield has pled that she has the protected statuses of being female, African-American, and over the age of 40 at the time of her termination.  (ECF No. 127 ¶¶ 1, 4, 6, 43).  She also provides examples where she was treated differently than her comparators, in particular her numerous suspensions before the March 2016 Incident and her suspension after the March 2016 Incident, while her comparable co-workers were not suspended.  (Id. ¶¶ 29, 31–34, 56–57, 59, 62, 87, 89, 92, 118, 152–58; ECF No. 127 at 25).  She claims that the animus based on her protected classes led to her constructive discharge.  (Id. ¶¶ 1, 4, 6, 43).  Accordingly, liberally construing the expanded facts pled in Bromfield's Amended Complaint, the Court concludes Bromfield has met the merits threshold as to at least some of her claims.

Thus far, apart from the limited representation for the failed settlement negotiations, Bromfield has litigated this four-year-old case without the assistance of counsel, navigating discovery disputes, overcoming Defendants' motion for summary judgment, and successfully moving to amend the Complaint.  (See supra section II.A).  In addition, given the current COVID-19 crisis, the availability of pro bono counsel is even more constrained.  As evidenced by her multiple applications for pro bono counsel that failed to comply with the Court's instructions to identify the merits of her claim, however, Bromfield has demonstrated difficulty in developing her claims.  In addition, her erroneous appeal to the Second Circuit, numerous discovery filings, and communications to the Court evidence her lack of understanding of what is required of her in this litigation.  While Bromfield has managed her side of this litigation for the last four years, based on the Court's review of her submissions to date, the Court is doubtful that Bromfield will

be able to meaningfully move forward in this litigation without counsel.  Although the legal issues presented in this case may not be unduly complex, the Court believes that Bromfield will have trouble understanding and arguing those issues as the case progresses, as she did in her Complaint and prior applications for pro bono counsel.

Accordingly, for just determination of Bromfield's claims, the Court finds that it is reasonable and appropriate to appoint pro bono counsel for Bromfield at this time.

Until pro bono counsel is appointed, Bromfield is reminded that she may seek assistance from the New York Legal Assistance Group.  Additional information can be found online at nylag.org; by calling 212-613-5000; or by emailing info@nylag.org.  In addition, the United States District Court for the Southern District of New York has a Pro Se Intake Unit with information to assist individuals who are representing themselves in the Southern District without the assistance of an attorney.  Additional information can be found online at nysd.uscourts.gov/prose; by calling at 212-805-0175; or emailing Temporary_Pro_Se_Filing@nysd.uscourts.gov.  Bromfield is notified that the SDNY Pro Se Intake Unit will only temporarily accept emails as a response to the COVID-19 pandemic and will cease accepting emails once the pandemic subsides.

In addition, Bromfield is strongly encouraged to consent to receiving electronic service of case activity through notifications sent by email from the Court's Electronic Case Filing system by submitting the Consent to Electronic form found online at https://nysd.uscourts.gov/forms/consent-electronic-service-pro-se-cases.

### V.   CONCLUSION

For the reasons stated above, Bromfield's application for pro bono counsel is GRANTED. The Pro Se Office is respectfully directed to request pro bono counsel for Bromfield.  The Clerk of

Court is respectfully directed to close ECF No. 128.  Chambers has mailed a copy of this Order to

Bromfield at the address below.


Dated:          New York, New York
                April 24, 2020

                                        SO ORDERED

                                        _____

                                        **SARAH L. CAVE**
                                        **United States Magistrate Judge**

Copies Mailed By Chambers To:          Lenora Bromfield
                                       66 Washington Terrace
                                       Bridgeport, CT 06604