UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LENORA BROMFIELD,

                                    Plaintiff,

          -v-

BRONX LEBANON SPECIAL CARE CENTER, INC., et al.,

                                    Defendants.

CIVIL ACTION NO.: 16 Civ. 10047 (ALC) (SLC)

**ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court are the parties' submissions concerning several outstanding discovery disputes raised by pro se Plaintiff Lenora Bromfield ("Bromfield").  The Court directed Defendants Bronx Lebanon Special Care Center, Inc. ("BLSCC"), Mariea Collora ("Collora"), Olive Brown ("Brown"), Yvonne Weatherburn ("Weatherburn"), and Grace Baptiste ("Baptiste") (collectively, "Defendants") to respond to Bromfield's:  (i) "Motion to Deem[] Facts Admitted for Unresponsive Answer or for Devious Response to Plaintiff's Allegations in the Amended Complaint" (ECF Nos. 148–50) ("Motion to Deem Facts Admitted"); (ii) Letter-Motion for a discovery conference (ECF Nos. 154, 156) (the "Conference Motion"); (iii) Motion to Compel (ECF Nos. 169–70) (the "Motion to Compel"); and (iv) "Counter Settlement Statement or in the Alternative Motion for Jury Trial" ("Counter Settlement Statement") (ECF No. 183) (the Motion to Deem Facts Admitted, the Conference Motion, the Motion to Compel, and the Counter Settlement Statement, together "Bromfield's Motions").

Bromfield's Motions have been fully briefed and are ripe.  (See ECF Nos. 148–50, 154, 156, 169–70, 183–84, 190, 198–99).  The Court has considered the parties' filings, and for the reasons that follow, Bromfield's Motions are DENIED.

# I.BACKGROUND

### A. Procedural Background

The procedural and factual history of this action has been set forth in the decisions of the Honorable Judge Henry B. Pitman, denying Plaintiff leave to file an amended complaint (ECF No. 89); the Honorable Andrew L. Carter, Jr., granting Plaintiff leave to file an amended complaint (ECF No. 124); and the undersigned, granting Plaintiff's motion for pro bono counsel (ECF No. 137), and amending the pro bono counsel order (ECF No. 162).  Accordingly, the Court includes only the factual and procedural background material to the resolution of Bromfield's Motions.

On December 28, 2016, Bromfield filed her initial complaint (the "Complaint") alleging claims for employment discrimination and retaliation arising under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.  ("ADEA") (ECF No. 2; see ECF No. 124 at 1 (describing Bromfield's allegations as "claims of discrimination and retaliation based on age")).   The Complaint did not name Baptiste as a Defendant.  (ECF No. 2).

The action proceeded to discovery, and on January 24, 2018, Judge Pitman entered a case management plan setting July 24, 2018 as the date for the close of fact discovery.  (ECF No. 32). Bromfield waived her right to take depositions and was granted leave to serve "up to 100 interrogatories." (ECF No. 43).  Discovery in this action has been protracted and contentious; on August 6, 2018, Judge Pitman ruled following a multitude of filings (see ECF Nos. 45–55), in pertinent part holding that "[Bromfield's] request for video footage from defendant hospital's security cameras, beyond that which has already been produced, is denied on the ground that such evidence is not relevant to any issue in the case." (ECF No. 56 at 1).  Judge Pitman also

ordered Defendants to identify "the certified nursing assistant or nurse who was assigned to Room 608A from 12:00 a.m. though 8:00 a.m. on March 19, 2016." (Id. at 2).

On November 2, 2018 Judge Pitman again denied Bromfield's application to compel the production of additional videos and directed Defendants to "double check their records and confirm to plaintiff in writing" that they did not have records from which they could ascertain the identity of the employee who cared for the injured patient. (ECF No. 75 at 1).

On February 7, 2019, Defendants requested a pre-motion conference with respect to their anticipated motion for summary judgment. (ECF No. 78). On February 25, 2019, Bromfield moved to file an amended complaint, which Defendants opposed. (ECF Nos. 82–86). On March 20, 2019, Judge Carter granted Defendants leave to re-file their request for leave to file a motion for summary judgment once Bromfield's motion for leave to amend was decided. (ECF No. 87). On April 26, 2019, Judge Pitman denied Bromfield's motion for leave to amend her Complaint. (ECF No. 89 (the "Amendment Order")). In the Amendment Order, Judge Pitman noted that Bromfield filed her motion to amend "more than two years after filing her initial complaint, more than four months after the close of fact discovery and after the deadline to file dispositive motions." (ECF No. 89 at 8–9) (emphasis added).

On May 9 and 24, 2019 Bromfield filed a motion for reconsideration of the Amendment Order, (ECF Nos. 92–96), which Judge Pitman denied on May 30, 2019. (ECF No. 97 (the "Reconsideration Order")). The parties then briefed Defendants' motion for summary judgment. (ECF Nos. 98, 100, 108, 113–18).

Bromfield filed a notice of appeal and an amended notice of appeal of the Reconsideration Order. (ECF Nos. 102, 104–05). On October 9, 2019, the Second Circuit denied

her appeal for lack of jurisdiction.  (ECF No. 123).  On August 5, 2019, construing the notice of appeal as a motion for reconsideration of the Reconsideration Order, Judge Carter set a briefing schedule.  (ECF No. 110).  On October 3, 2019, this case was reassigned to the undersigned to supervise general pretrial matters.

On January 30, 2020, Judge Carter granted Bromfield leave to amend her Complaint and denied Defendants' motion for summary judgment as moot.  (ECF No. 124).  In granting leave to amend, Judge Carter noted that "discovery issues were still in the process of being resolved on November 2, 2018," and anticipated that "additional discovery may need to be taken[.]"  (Id. at 5–6) (emphasis added).

On February 26, 2020, Bromfield filed her Amended Complaint (the "Amended Complaint") (ECF No. 127).  On May 27, 2020 Defendants filed their Answer (the "Answer").  (ECF No. 145).  On June 9, 2020, Bromfield filed the Motion to Deem Facts Admitted (ECF Nos. 148–50) and on July 15, 2020 Bromfield filed the Conference Motion (ECF Nos. 154, 156).  The Court scheduled a conference on August 5, 2020 concerning Bromfield's discovery disputes. (ECF No. 160).  Bromfield failed to appear and the Court issued an order that it would hold "all of Ms. Bromfield's discovery disputes in abeyance pending the settlement conference scheduled [for October 1, 2020]."  (ECF No. 163 at 1).  Before the settlement conference, Bromfield filed the Motion to Compel (ECF Nos. 169–70), which the Court held in abeyance pending the settlement conference.  (ECF No. 171).  Following the October 1, 2020 settlement conference (which did not result in a settlement), on October 7, 2020 Bromfield filed the Counter Settlement Statement (ECF No. 183), and the Court directed Defendants to respond to Bromfield's Motions.  (ECF No.

184).  On October 22, 2020 Defendants responded (ECF No. 190) and on November 25, 2020, Bromfield replied.  (ECF Nos. 198, 198-1, 199).

    **B.**  **Factual Background**

        Bromfield alleges that she was employed by BLSCC for 24 years as a Certified Nursing Assistant ("CNA"), but after being falsely charged with workplace misconduct, was forced to resign.  (ECF No. 127 ¶¶ 6, 22–23).  The Amended Complaint alleges that Defendants' conduct violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the ADEA.  (Id. ¶ 2).  Bromfield alleges that Collura discriminated against her because Bromfield is female, Black, and was over the age of 40 at the time of her constructive discharge.  (Id. ¶¶ 1, 4, 6, 43).

        Bromfield alleges that because she is a Black female over 40, Defendants fraudulently accused her of injuring a resident-patient on March 17 or 18, 2016 (the "March 2016 Incident").  (ECF No. 127 ¶ 4).  Bromfield alleges the resident-patient was injured on March 20, 2016, but Bromfield was accused of causing the injury on March 17 or 18, 2016, and Defendants covered up the actual facts underlying the injury.  (Id. at 4–5).  As a result of the March 2016 Incident, Defendants subjected Bromfield to a hostile work environment, treated her differently because of her race, and harassed her.  (Id. ¶ 6).  Following the March 2016 Incident, she was suspended for nearly two weeks and told that she could resign and keep her benefits, or be fired.  (Id. ¶¶ 69–74, 120).  On April 19, 2016, Bromfield reluctantly decided to resign.  (Id. ¶ 74).

        Bromfield alleges that a hostile work environment existed before and after the March 2016 Incident because of Collura's racial animus against her, which manifested in suspensions

without cause that were later rescinded due to a lack of evidence. (ECF No. 127 ¶¶ 29, 31–34, 56–57, 59).

Bromfield alleges that she was treated differently than comparators. After the March 2016 Incident, Collura suspended Bromfield pending an investigation into the incident, but not any other CNAs who were similarly situated and assigned to work in the same room in which the incident occurred around the same time. (ECF No. 127 ¶¶ 62, 87, 89, 92, 118). Bromfield alleges that on March 19, 2016, Baptiste worked in the same room and with the same resident-patients as Bromfield, but the other Defendants helped Baptiste fabricate a lie regarding the March 2016 Incident. (Id. ¶¶ 152–56). In addition, non-party fact witnesses, CNAs Janice Hamilton and Melissa Santos, also worked in the same room where the March 2016 Incident occurred around the same dates, but were not treated like Bromfield. (Id. at 85–87). Bromfield alleges that Defendants sought to blame her for the March 2016 Incident even though she had no involvement and they do not know who worked the shift on which the resident-patient was injured. (Id. ¶ 92–95).

Bromfield alleges that during discovery in this ligation she found out that Santos reported to Defendants that the resident-patient injured during the March 2016 incident was injured on March 20, 2016 as Bromfield claims, not March 17 or 18, 2016 as Defendants claim. (ECF No. 127 ¶ 77).

Bromfield alleges that before her termination, Collura, Baptiste, and Brown retaliated against her for reporting that Baptiste slept during work hours, because Brown and Baptiste are "very close friends." (ECF No. 127 ¶¶ 44–47). In addition, Bromfield alleges that she was retaliated against for making written and verbal complaints to Brown regarding substandard

care, short staffing, and other nurses' failures to provide care to resident-patients at Bronx Lebanon.  (Id. ¶¶ 48–50).  Bromfield alleges she was also retaliated against for requesting a transfer out of her unit so that she would not work with Baptiste.  (Id. ¶ 50).  Bromfield alleges that after she complained of substandard care and lack of adequate staffing, Brown retaliated with comments such as commanding Bromfield "to go back to work as though [Bromfield was] a 17th century slave in America."  (Id. ¶ 53).  Despite her protestations, Bromfield was forced to continue working with Baptiste and Brown.  (Id. ¶¶ 53, 55).

Bromfield alleges that Collura, Brown, and Weatherburn, as "policy makers and managers," acted under the authority of BLSCC, which is liable for Collura, Brown, Weatherburn, and Baptiste's conduct and omissions under "the doctrine of Respondent Superior."  (ECF No. 127 ¶¶ 164, 168).

## II. DISCUSSION

### A.  Legal Standards

The Federal Rules of Civil Procedure establishes the scope of discovery as the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Rule 26 gives a district court 'broad discretion. . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on 'just terms.'"  Coty v. Cosmopolitan Cosmetics, Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (quoting Capstone Logistics Holdings, Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018)).

Interrogatories, which are governed by Rule 33 of the Federal Rules of Civil Procedure "may inquire into any discoverable matter."  Harnage v. Brennan, No. 3:16 Civ. 1659 (AWT), 2018 WL 4473393 at *3 (D. Conn. Aug. 17, 2018) (citing Fed. R. Civ. P. 33(a)(2)).  "A party served with interrogatories is obliged to respond by 'furnishing such information as is available to the party.'" In re Auction Houses Antitrust Lit., 196 F.R.D. 444, 445 (S.D.N.Y. 2000) (citing Fed. R. Civ. P. 33(a)).

"A party may serve on any other party a request [to produce documents] within the scope of Rule 26(b)" that are in the other party's possession, custody, or control.  Fed. R. Civ. P. 34(a)(1). The responding party then must produce the requested documents "or state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  If a party fails to make a disclosure required by Rule 26(a), or makes an incomplete disclosure, any other party may move to compel disclosure.  Fed. R. Civ. P. 37(a).  "Motions to compel, pursuant to Rule 37, are left to the sound discretion of the court."  See Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd., 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (internal citations omitted).  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process."  EM Ltd. v. Republic of Arg., 695 F.3d 201, 207 (2d Cir. 2012).

**B.  Application**

Though numerous, Bromfield's Motions involve two basic disputes: (1) whether Defendants' Answer was deficient such that the Court should deem the factual allegations in the Amended Complaint admitted, and (2) whether Defendants' responses to:   (i) three interrogatories directed to Defendant Baptiste in "Plaintiff's First Set of Interrogatories, dated April 28, 2020" (see ECF No. 154 at 1) ("Interrogatories"), and (ii) five document requests in "Plaintiff's Ninth Set of Document Demands, dated April 28, 2020" ("Document Requests") (see

id.) (respectively, the "Interrogatory Responses," "Document Request Responses," and together, the "Discovery Responses") were deficient.  These two disputes are addressed below.

### 1. Motion to Deem Facts Admitted (ECF Nos. 148–50)

In the Motion to Deem Facts Admitted, Bromfield seeks a Court order that ten of her allegations be deemed admitted due to purported deficiencies in Defendants' Answer (ECF No. 145).  (ECF Nos. 148 at 1, 150 at 1–6).   In particular, Bromfield cites to instances where Defendants: (i) admit to a portion of an allegation and deny the remainder, (ii) respond that an allegation "contain[s] a legal conclusion to which no response is required[,]" (iii) deny knowledge or information sufficient to form a belief as to an allegation, or (iv) refer the Court to cited documents for a comprehensive and accurate recitation of their contents.  (Id. at 2–6).

Federal Rule of Civil Procedure 8(b) requires that "a party must (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b)(1).  "A denial must fairly respond to the substance of the allegation[,]" Fed. R. Civ. P. 8(b)(2), and a party answering a complaint may interpose a general or a specific denial, deny part of an allegation or respond by stating that it lacks sufficient knowledge or information to respond, which has the effect of a denial.  Fed. R. Civ. P. 8(b)(3)–(5).  A failure to deny an allegation that requires a responsive pleading has the effect of an admission, Fed. R. Civ. P. 8(b)(6), and pleadings "must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Further, "there are no magic words needed to deny an allegation . . . [and] The federal rules were designed to eliminate objections based on frivolous or immaterial technicalities."  Koch v. Pechota, No. 10 Civ. 9152 (RWS), 2013 WL 3892827, at *7 (S.D.N.Y. July 25, 2013) (internal citation omitted).

The Court is satisfied that Defendants' Answer sufficiently responded to Bromfield's allegations and satisfied the requirements of Rule 8(b).  Many of Defendants' responses contain a partial admission coupled with either a denial or a statement that Defendants lack sufficient knowledge to respond to the remainder of the allegation, both of which the Federal Rules of Civil Procedure permit.  Fed. R. Civ. P. 8(b)(4)–(5); see Koch, 2013 WL 3892827 at *8 (holding that defendants' answers, which were "not . . . elaborate" and which plaintiff argued were denials only "upon information and belief" made without an adequate investigation nevertheless satisfied "the basic requirements of Rule 8(b)").  For example, Paragraph 44 of the Amended Complaint alleges that:

> Plaintiff had an adversarial relationship with Defendant Baptiste in a prior employment working at Rebekah Rehab & Extended Care Center at the Odd Fellows Life Community located at Havemeyer Avenue in the Bronx. . .from 1989 to 1991 before working for the Hospital

(ECF No. 127 ¶ 44).  Defendants' Answer states:

> Upon information and belief, Plaintiff and Ms. Baptiste both worked at Rebekah Rehab and Extended Care Center at the Odd Fellows Life Community, located at 1070 Havemeyer Avenue, Bronx, New York 10462, from approximately 1989 to 1991, prior to working at the Hospital, and deny the remaining allegations contained in Paragraph 44 of the Complaint.

(ECF No. 145 at 44).  Thus, Defendants admitted Bromfield and Baptiste were previously colleagues at another healthcare facility, and denied the remaining allegations in paragraph 44, including that there was "an adversarial relationship."  This partial admission, and others like it, is sufficient.

 The Court also finds proper the allegations to which Defendants objected as legal conclusions.  (See, e.g., ECF No. 150 at 2 (in response to allegation in Paragraph 87 that "Plaintiff and other [nurses] assigned to room 608 are similarly situated . . ." Defendants responded

"[n]either admit or deny the allegations contained in Paragraph 87 . . . as they contain a legal conclusion to which no response is required.")).   It is well-settled that courts "should 'give no effect to legal conclusions couched as factual allegations.'"   In re Ne. Indus. Dev. Corp., No. 14 Civ. 7056 (NSR), 2015 WL 3776390, at *3 (S.D.N.Y. June 15, 2015) (quoting Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007)).   In an action alleging discrimination, whether Bromfield and others are "similarly situated" within the meaning of Title VII or the ADEA is a legal conclusion.

Similarly, when the Amended Complaint appeared to refer to extraneous documents, such as transcripts or reports, Defendants properly referenced those documents in their answer. See Colonial Oil Indust., Inc. v. Indian Harbor Ins. Co., No. 11 Civ. 5018 (DAB), 2012 WL 3964747, at *2–5 (S.D.N.Y. Sept. 10, 2012) (dismissing complaint alleging contract dispute and referring to the contract, in addition to the answer, as a matter the court could take judicial notice of).  Thus, to Paragraph 146 of the Amended Complaint, "[o]n April 5, 2016, Defendant Collura stated to Defendant Baptiste 'Please tell me what you know about the incident on 3/18/16 with the resident in room 608A[]'" Defendants responded "[n]either admit nor deny the allegations contained in Paragraph 146 . . . which appear to recite portions of an interview transcript produced during discovery, and respectfully refer the Court to that document for the full and accurate statement of its contents."  (ECF No. 149 at 4).

The Court finds that Defendants' Answer satisfied Rule 8(b) and accordingly, Bromfield's Motion to Deem Facts Admitted is DENIED.

2. **Defendants' Discovery Responses (ECF Nos. 154, 156, 169–70, 183)**

   a. **Interrogatories**

Bromfield's Interrogatories 3, 4, and 8, and Defendant Baptiste's Interrogatory Responses, are as follows:

**Interrogatory No. 3**: Did you work on the 6th Floor in room 608, section B or side B ('608B) on March 19, 2016 for the 4:00 pm to 12:30 am shift at the Hospital? (ECF 156 at 12).

**Response**: Defendant objects to this Interrogatory as it seeks information readily accessible to Plaintiff, as Plaintiff worked alongside Defendant and is aware of which room she worked in.  Subject to and without waiving the foregoing specific objection or any of the General Objections, Defendant responds as follows: Defendant was assigned to the patient in room 608B on March 19, 2016 during the 4pm to 12:30 am shift.  (ECF 156 at 28).

**Interrogatory No. 4**: While working at the Hospital in room 608B during the 4:00 pm to 12:30 am shift on March 19, 2016, did you observe, at anytime [sic.] during the course of your shift, Ms. Lenora Bromfield working in the same room with you . . .if you answered yes, please identify what area or section of the room Ms. Lenora Tillett Bromfield had work.  (ECF No. 156 at 12).

**Response**: Defendant objects to this Interrogatory as it seeks information readily accessible to Plaintiff, as Plaintiff worked alongside Defendant during the 4pm to 12:30am shift.  Subject to and without waiving the foregoing specific objection or any of the General Objections, Defendant responds as follows: Plaintiff was assigned to the patient in room "608A" on March 19, 2016; rooms "608A" and "608B" are separated by a curtain divider.  (ECF No. 156 at 28).

**Interrogatory No. 8**: Did you allege to Ms. Olive Brown that Ms. Lenora Bromfield was involved in an argument or commotion at the nurses [sic.] lounge or conference room sometime in January 2015 from which Ms. Bromfield was

suspended for three days? . . .If you answered no, then please state what you had stated and to whom. (ECF No. 156 at 13).

**Response**: Defendant objects to this Interrogatory as it seeks information beyond the scope of issues relevant to this litigation, as this litigation centers around a 2016 patient incident and injury rather than a 2015 argument among staff members.  Subject to and without waiving the foregoing specific objection or any of the General Objections, Defendant responds as follows: Defendant discussed the referenced argument, which involved several staff members, with Dr. Brown. (ECF No. 156 at 30).

In moving to compel supplemental responses, Bromfield argues that these responses are "unresponsive, evasive and scandalous."  (ECF No. 154 at 1).  For example, Bromfield objects to the response to Interrogatory No. 3, which she asserts "was a yes or no answer.  Having a room assignment doesn't mean that you worked in that assignment."  (ECF No. 156 at 3).  In a similar vein, with respect to the response to Interrogatory 8, Bromfield counters that "Defendant [sic.] response is vague, ambiguous and not responsive to Plaintiff's legitimate question . . . [and] deliberately refuse to state what she stated to Defendant Olive Brown[.]"  (Id. at 5).

Defendants counter that the Interrogatories seek detailed information from years earlier, that they compiled information within their control and answered with all available information. (See ECF No. 190 at 5–6).  Defendants also note that these discovery demands are outside of the scope of Bromfield's claims, and do not prove discrimination, and instead, Bromfield "is laser-focused on proving that she is not responsible for the injury that a[] [BLSCC] resident suffered in March 2016."  (ECF No. 190 at 5).

Bromfield's criticisms are overly rigid and literal and hold Defendants to a much higher standard than Federal Rule of Civil Procedure 33, with which the Court finds Defendants have

complied.   Bromfield's Interrogatories seek specific information from events that occurred almost five years ago and the Interrogatory Responses fairly address the substance of each Interrogatory. Thus, to Interrogatory 3, Defendants provide the location of Baptiste's assignment on a shift four years ago; to Interrogatory 4, Defendants situate both Bromfield and Baptiste in room 608, on opposite sides of a curtain; and, despite the ambiguous phrasing of Interrogatory 8, Defendants nevertheless admitted the occurrence of a conversation following the referenced argument.  (See ECF No. 156 at 28, 30).  The Court is satisfied that the Interrogatory Responses "furnish[ed] such information as [was] available[.]"  In re Auction Houses, 196 F.R.D. at 445. Considering also that Defendants have provided all documents in their possession concerning the March 2016 Incident, and are not withholding documents (see ECF No. 156 at 41–42), the Court is satisfied that they have complied with Rule 33.  See Reshetnikov v. Rep. Nat. Bank of N.Y., No. 01 Civ 7909 (SHS) (MHD), 2003 WL 22208378 at *1 (S.D.N.Y. Sept. 24, 2003) (denying motion to compel further interrogatory responses and finding substantial compliance by a responding party whose responses were accompanied by "all of the documents that he has that are pertinent to his claim").

Accordingly, Bromfield's Motion to Compel supplemental Interrogatory Responses is DENIED.

###    b.  Requests for Production

Bromfield moves to compel in connection with the following Document Requests:

**Document Request No. 1**: A true and complete copy of Mr. Ian Andrew's (License Practical Nurse (LPN)) Incident Report prepared and dated March 20, 2016, which is referenced or mentioned in Mr. Ian Andrews March 25, 2016 incident report [BLHC 0000184].

**Document Request No. 2**: A true and complete copy of Defendant Grace Baptist's incident report regarding and following the March 20, 2016 incident of the resident-patient with the injured or broken toe in room 608A.

**Document Request No. 3**: A true and complete copy of the Hourly Round-Sheets for March 20, 2016 covering the midnight 12:00 a.m. to 8:30 a.m. shift and the morning 8:00 a.m. to 4:30 p.m. shift for room 608 (A & B).

**Document Request No. 4**: A true and complete copy of the Employee Assignment Sheets for March 20, 2016 covering the midnight 12:00 a.m. to 8:30 a.m. shift and the morning 8:00 a.m. to 4:30 p.m. shift for room 608 (A & B).

**Document Request No. 5**: A true and complete copy of the video recording or footage for March 19, 2016 evening 4:00 p.m. to midnight 12:30 a.m. and March 20, 2016; covering the midnight 12:00 a.m. to 8:30 a.m. shift through the morning 8:00 a.m. to 4:30 p.m. shift relative to or at the location of Room 608 (A & B)

(ECF No. 156 at 5–6, 22).  Defendants' Document Request Responses are substantively identical:

Plaintiff has already requested and received all documentation pertaining to the March 2016 patient incident surrounding the end of her employment. . . **Defendants are not in possession of any additional documents pertaining to the resident patient's injury or related investigation . . . All such documents in Defendants' possession, custody and control were produced to Plaintiff in 2018**. Defendants are not withholding any documentation pertaining to the resident's patient injury or related investigation . . .

(ECF No. 156 at 41–42) (emphasis added).

Bromfield cannot compel Defendants to produce documents that are not in their possession, and Defendants' Document Request Responses are unequivocal that they produced — two years ago — all documents concerning the investigation of the March 2016 Incident. Similarly, in their consolidated opposition to Bromfield's Motions, Defendants stated that "[d]uring the initial discovery period, which closed in 2018, Defendants produced well over 400 pages of documents, including, but not limited to, the entire file of [BLSCC's] investigation into the March 2016 patient care incident . . . [and] also responded to hundreds of interrogatories regarding Plaintiff's claims."  (ECF No. 190 at 2).  "Under ordinary circumstances, a party's good

15

faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production." Roundtree v. City of N.Y., No. 15 Civ. 8198 (WHP), 2020 WL 4735196, at *1 (S.D.N.Y. Aug. 14, 2020) (denying motion to compel, including as to other incident reports corresponding to the date of the complaint, where defendants produced the only records they could locate) (quoting Atwell v. City of N.Y., No. 07 Civ. 2365 (WHP), 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008)). While Bromfield attributes bad faith to Defendants, and their counsel, alleging a cover-up by all involved (see ECF Nos. 154, 156, 199), the Court sees no evidence calling into doubt Defendants' representation that they are not withholding any discoverable documents and have produced the investigation documents pertaining to the March 2016 Incident. This fact alone is fatal to Bromfield's application. See Roundtree, 2020 WL 4735196 at *1.

Second, the Court also denies Bromfield's application in an exercise of its broad latitude to manage the scope of discovery. See EM Ltd., 695 F.3d 201, 207; Coty, 2020 WL 3317204, at *1. Discovery in this 2016 discrimination action matter proceeded for more than two years before Bromfield filed the Amended Complaint, which added a single individual defendant (Baptiste) and race discrimination claims stemming from the same March 2016 Incident. (Compare ECF Nos. 2, 127). Bromfield's Document Requests cover well-trodden ground, namely, liability for, and the circumstances surrounding, the patient's injury in the March 2016 Incident, which was the common focus of both of her pleadings. (See id.) In fact, Bromfield's Request No. 4 is precluded by two prior rulings of the Court denying additional video footage as "not relevant to any issue in the case." (ECF No. 56 at 1; see ECF No. 75).

Accordingly, Bromfield's Document Requests stray from the racial discrimination claims added to the Amended Complaint and instead attempt to relitigate liability for the patient's injury. Here, a lengthy, multi-year discovery period has elapsed, and considering the amount in controversy and the cumulative nature of Bromfield's Document Requests to the discovery preceding the complaint amendment, the Court denies Bromfield's Motion to Compel supplemental responses to her Document Requests. See Journal Pub. Co. v. Am. Home Assur. Co., 771 F. Supp. 632, 638 (S.D.N.Y. 1991) (limiting the scope of discovery following complaint amendment "solely to that needed in connection with the new allegations to be included in the amended complaint."); cf. Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp. Inc., 328 F.R.D. 450, 452 (S.D.N.Y. 2018) (denying motion to compel after the close of discovery on proportionality grounds, in view of the marginal utility of the documents requested, and noting that "[f]act discovery . . .occurred over a period in excess of three years, which is long enough.").

Although the Court extends latitude to Bromfield as a pro se litigant, "[n]onetheless, 'pro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.'" Caidor v. Onondaga Cty., 517 F.3d 601, 605 (2d Cir. 2008) (quoting Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995) (holding that a pro se litigant who fails to timely object to a magistrate judge's order on a non-dispositive matter waives the right to appellate review).

Accordingly, Bromfield's Motion to Compel additional Document Request Responses is DENIED.

## III.<u>CONCLUSION</u>

For the reasons set forth in this Discovery Order, Bromfield's Motions are DENIED.

The Clerk of Court is respectfully directed to mail a copy of this Order to Ms. Bromfield at

the address below.

Dated:      New York, New York
            December 28, 2020

                                 SO ORDERED


                                 _____
                                 **SARAH L. CAVE**
                                 **United States Magistrate Judge**

Mail To:    Lenora Bromfield
            66 Washington Terrace
            Bridgeport, CT 06604