**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LENORA TILLET BROOMFIELD** | |
| **Plaintiff,** | |
| **-against-** | |
| **BRONX LEBANON SPECIAL CARE CENTER, INC.; MARIA COLLURA, DIRECTOR OF HUMAN RESOURCES; OLIVE BROWN, CHIEF NURSING OFFICER; YVONNE WEDDERBURN, ASSISTANT DIRECTOR OF NURSING; GRACE BAPTISTE, CERTIFIED NURSING ASSISTANT,** | **16-cv-10047 (ALC) (SLC)**<br><br>**OPINION & ORDER** |
| **Defendants.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Lenora Tillet Broomfield ("Plaintiff" or "Broomfield"), representing herself *pro se*, submitted an amended complaint pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act ("ADEA") against Defendants Bronx Lebanon Special Care Center, Inc.; Maria Collura, Director of Human Resources; Olive Brown, Chief Nursing Officer; Yvonne Wedderburn, Assistant Director of Nursing; and Grace Baptiste, Certified Nursing Assistant (Collectively "Defendants"). ECF No. 127. In the amended complaint, Plaintiff argues that she was the victim of a racial and age-based discrimination by Defendants while working at Bronx Lebanon Special Care Center, Inc, which led to an improper, forced resignation from the Hospital after an incident that occurred in 2016. *Id.*

Defendants filed a motion for summary judgment requesting dismissal of the Plaintiff's amended complaint. ECF No. 378. Defendants argue that the Plaintiff is not entitled to any relief because (1) she has not exhausted the administrative remedies available; (2) she cannot establish

a *prima facie* claim under the ADEA or Title VII in light of her own testimony and in the absence of any evidence to infer discriminatory animus; and (3) Defendants have shown non-discriminatory reasons for terminating Plaintiff's employment. ECF No. 378. For the reasons set forth below, the Defendants' motion for summary judgement is **GRANTED**.

**STATEMENT OF FACTS**

Plaintiff worked as a Certified Nursing Assistant ("CNA") for 24 years at Bronx Lebanon Special Care Center, Inc. ("Hospital"). ECF No. 127. at ¶ 23. Plaintiff alleges that Defendant Collura, the Director of Human Resources at the Hospital, imposed unwarranted disciplinary action against her over the course of multiple years of employment that was motivated by invidious and discriminatory racial animus. *Id*. at ¶ 28. Plaintiff also alleges that the Defendants created a hostile work environment and suspended Plaintiff without cause. *Id*. at ¶ 31.  Plaintiff asserts that all of these prior suspensions were subsequently overturned due to lack of sufficient evidence. *Id.* at ¶ 32. For example, Defendant Collura allegedly imposed a three-day suspension on Plaintiff from December 18 to 20, 1995, which was later rescinded on October 10, 1996 due to lack of evidence. *Id.* at ¶ 33. In addition, Defendant Collura allegedly subjected the Plaintiff to a three-day suspension from September 3 to 5, 2004, which was also rescinded due to lack of evidence. *Id.* at ¶ 34. In January 2010, Defendant Collura allegedly subjected the Plaintiff to a three-day suspension which involved Defendant Olive Brown. *Id.* at ¶ 35. In or about January 2015, Defendant Collura allegedly imposed a three-day suspension on Plaintiff, which involved allegedly false allegations by Defendant Grace Baptiste regarding an incident that Plaintiff was not involved in, which was later rescinded due to lack of evidence. *Id.* at ¶ 36. This alleged scheme of differential enforcement of disciplinary measures against the Plaintiff resulted in her resignation from the Hospital in April 2016. *Id.* at ¶¶ 21, 38-40.

On March 20, 2016, just one month before the Plaintiff's resignation, a 101-year-old patient who suffered from dementia and psychosis was under the care of the Plaintiff and another CNA. ECF No. 374, Affidavit of Maria V. Collura, sworn to August 3, 2022 (hereinafter, "Collura Aff.") at ¶ 16.  Due to the patient's age and condition, she required two CNAs to transfer and lift her into and out of her bed and geri-chair. *Id*. at ¶ 17. It was reported that the patient had fractured her toe, and it was later determined that the patient's injury likely took place between March 17 and 18, 2016. *Id*. at ¶ 18. An investigation found that the Plaintiff tried to transport the patient on her own multiple times, which jeopardized the patient's safety, disregarded the patient's individual care plan,  and violated the Hospital's policy. *Id*. at ¶¶ 20-25. According to the Defendants, this insubordination and "failure to follow orders, rules and established practices, or improper conduct towards patients" justifies their threatened termination and seeking of the Plaintiff's resignation. *Id*. at ¶ 24; *see also* ECF No. 378 at 26.

In her amended complaint, the Plaintiff claims that her resignation was made under "threat, duress and coercion" by Defendant Collura as she was faced with resigning or being terminated immediately. ECF No. 127 at ¶ 73. In their motion for summary judgment to dismiss Plaintiff's amended complaint, Defendants corroborated the fact that the Hospital presented this choice to the Plaintiff, stating, "Plaintiff was offered the option to resign in lieu of termination, which she accepted." ECF No. 378 at 3. The parties dispute the justification for Plaintiff's termination, particularly regarding what sparked the Hospital's decision to offer the Plaintiff the opportunity to resign. As stated, Plaintiff asserts that her resignation was because she is an older Black woman. ECF No. 127. at ¶ 32. Plaintiff had also complained to Defendant Brown, both verbally and in writing, regarding the short staffing on her sixth-floor unit and the CNAs' neglect of their duties to provide care to the patients. *Id*. at ¶¶ 49-50.

3

**PROCEDURAL HISTORY**

On December 28, 2016, Plaintiff filed the original complaint alleging age discrimination and retaliation claims under the ADEA and Title VII of the Civil Rights Act of 1964. ECF No. 1. On August 14, 2017, Defendants filed an answer to the complaint. ECF No. 23. On February 20, 2020, Plaintiff filed an amended complaint against the Defendants alleging a violation of her rights under Title VII of the Civil Rights Act of 1964, the ADEA, and 42 U.S.C. § 1981, where she added race discrimination and retaliation claims. ECF No. 127. Plaintiff seeks injunctive relief, as well as compensatory, punitive, and nominal damages to be awarded to her in the form of a monetary award. The requested injunctive relief also includes being reinstated to her prior held position at the Hospital at the time of her resignation. *Id*.

On December 8, 2022, Magistrate Judge Sarah Cave issued a Report and Recommendation, which recommended that the Court deny the Plaintiff's request for leave to file a Second Amended Complaint and to re-open discovery. ECF No. 327. On March 30, 2023, this Court adopted Judge Cave's report and recommendation and dismissed with prejudice the Plaintiff's first, fifth, sixth, and seventh causes of action in Plaintiff's amended complaint alleging that Defendants violated 42 U.S.C. § 1981. ECF No. 333.

On May 31, 2023, Defendants filed the instant motion for summary judgment requesting dismissal of the amended complaint, including, *inter alia*, their memorandum of law and Local Rule 56.1 statement. ECF Nos. 373-378. On September 28, 2023, Plaintiff filed a memorandum of law in opposition to the instant motion for summary judgement. ECF No. 380. On October 27, 2023, Defendants submitted their reply memorandum in further support of their motion for summary judgment. ECF No. 381. These pleadings were also filed on the public docket on March 13, 2024. ECF Nos. 373-381. The Court considers this matter fully briefed.

4

## STANDARD OF REVIEW

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc*., 748 F.3d 120, 123–24 (2d Cir. 2014) (quoting the same language). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co*., 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc*., No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion ..., [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,' " *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014)

(quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). Indeed, "[w]hile summary judgment must be granted with caution in employment discrimination actions ... a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (quotation marks omitted); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006) ("[I]t is the law of this Circuit that summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact, and may be appropriate even in the fact-intensive context of discrimination cases." (citation and quotation marks omitted)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits ... to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"). However, "[a]lthough witness credibility is usually a question of fact for the jury, 'broad, conclusory attacks on the credibility of a witness will not, by themselves, present question of material fact' for trial." *Desia v. GE Life & Annuity Assurance Co.*, 350 F. App'x 542, 544 (2d Cir. 2009) (summary order) (citation and alteration omitted) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations omitted) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998))), *aff'd*, 367 F. App'x 178 (2d Cir. 2010).

As such, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (citation and alterations omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

7

In cases that involve claims of discrimination or retaliation, courts must use "an extra measure of caution" in deciding whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006). But "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Thus, even in such a case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb*, 521 F.3d 130, 137 (2d. Cir. 2008); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001). Pro se litigants' submissions "must be construed liberally and interpreted 'to raise the strongest argument they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). This Court has construed this motion with those considerations in mind.  However, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).

**DISCUSSION**

**I.     Title VII Race Discrimination Claim**

Title VII makes it unlawful "for an employer ... to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When there is no direct evidence of discrimination, discrimination claims under Title VII are guided by the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973). *See, e.g.*, *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). At the first step of this analysis, the plaintiff must point to evidence in the record showing that: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position she held; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination based on plaintiff's membership in the protected class. *Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). Generally, the burden of establishing a *prima facie* case is "minimal." *St. Mary's Honor Cir. v. Hicks*, 509 U.S. 502, 506 (1993). But a plaintiff cannot do so with "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). If the defendant meets that burden, at the third step the presumption of animus drops away, and the plaintiff must show that one of the reasons "for the adverse employment decision was discrimination." *Mandell v. County of Suffolk*, 316 F.3d 368, 381 (2d Cir. 2003). "To defeat summary judgment within the *McDonnell Douglas* framework, ... the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Holtz*, 258 F.3d at 78 (internal quotation marks omitted) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995)).

As an initial matter, Plaintiff did not exhaust her administrative remedies with respect to her Title VII race discrimination claim. On April 14, 2016, Plaintiff filed a charge of age discrimination and retaliation before the Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964 and the ADEA. On September 9, 2016, the EEOC dismissed Plaintiff's charge after finding that there was no probable cause. *See*

Declaration of Marc A. Sittenreich, dated May 31, 2023 (hereinafter, "Sittenreich Decl."), Exh. F. "Before bringing a Title VII suit in federal court, an individual must first present the claims forming the basis of such a suit in a complaint to the EEOC or the equivalent state agency." *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015). Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal quotation marks omitted).

The Second Circuit has, however, recognized that "claims ... not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). Claims are "reasonably related": 1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks omitted). Here, the Plaintiff failed to allege race-based discrimination in her April 2016 EEOC case. Notably, the record suggests that Plaintiff did not come to believe that she faced race discrimination until after her first deposition when she requested to leave to file her Amended Complaint in February 2019. ECF Nos. 82-84. This is fatal to her race discrimination claim under Title VII.

Nor does this Court find that Plaintiff's race discrimination claims are reasonably related to age discrimination claims. "Courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the

10

protected classification asserted in administrative filings are not reasonably related." *Wilson v. Southampton Hosp.*, No. 14-CV-5884, 2015 WL 5124481, at *11 (E.D.N.Y. Aug. 28, 2015) (internal quotation marks omitted). Indeed, courts have consistently found that claims of race discrimination are not reasonably related to age discrimination claims. *See, e.g.*, *D'Amato v. Conn. Bd. of Pardons & Paroles*, No. 12-CV-249, 2013 WL 617047, at *4 (D. Conn. Feb. 19, 2013) (holding that the plaintiff's Title VII claim was barred because it was not reasonably related to the age and disability discrimination claims brought before the EEOC); *Pinkard v. N.Y.C. Dep't of Educ.*, No. 11-CV-5540, 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on age, sex, or disability are not reasonably related to claims based on race or color, and vice versa." (italics omitted)); *James v. Fed. Reserve Bank of N.Y.*, No. 01-CV-1106, 2005 WL 1889859, at *5 (E.D.N.Y. Aug. 8, 2005) ("[The] [p]laintiff's race discrimination claim is not reasonably related to the disability, age, and gender discrimination charges she raised before the EEOC."), *reconsideration granted*, 471 F. Supp. 2d 226 (S.D.N.Y. 2007). These decisions flow from the idea that a plaintiff's age discrimination claim is not "expected to uncover discrimination related to race." *Kittrell v. Dep't of Citywide Admin. Servs. Div. of Pers.*, No. 10-CV-2606, 2013 WL 2395198, at *7 (E.D.N.Y. May 31, 2013), *aff'd*, 561 Fed.Appx. 30 (2d Cir. 2014). Therefore, this Court finds that Plaintiff's race discrimination claim is not reasonably related to her age discrimination claim and thus must be dismissed for failure to exhaust administrative remedies. *See Shands v. Lakeland Cent. Sch. Dist.,* No. 15-CV-4260 (KMK), 2017 WL 1194699, at *4 (S.D.N.Y. Mar. 30, 2017).

## II.    Title VII and ADEA Age Discrimination Claim

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's race." 42 U.S.C. § 2000e-2(a)(1). The ADEA also provides in part that "[i]t shall be

unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such

individual's age." 29 U.S.C. § 623(a)(1). The statute limits the class of persons protected by this

prohibition "to individuals who are at least 40 years of age." *Id.* § 631(a). "To establish a prima

facie case [of age discrimination], a plaintiff . . . must show (1) that she was within the protected

age group, (2) that she was qualified for the position, (3) that she experienced adverse

employment action, and (4) that such action occurred under circumstances giving rise to an

inference of discrimination." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129

(2d Cir. 2012) (internal quotation marks omitted). The burden that an employment discrimination

plaintiff must meet to defeat summary judgment at the *prima facie* stage is *de minimis. See, e.g.,*

*Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995); *see also Chambers v. TRM*

*Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994); *see also Dister v. Continental Group, Inc.,*

859 F.2d 1108, 1114 (2d Cir.1988). Since the court, in deciding a motion for summary judgment,

is not to resolve issues of fact, its determination with respect to the circumstances that give rise

to an inference of discrimination must be a determination of whether the proffered admissible

evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer

a discriminatory motive. *See, e.g., Cronin v. Aetna Life Insurance Co.,* 46 F.3d at 204; *see also*

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d at 38.

     This Court finds that the Plaintiff cannot establish a *prima facie* claim under the ADEA.

Defendants move for summary judgment on Plaintiff's ADEA claims, arguing that Plaintiff has

not shown an inference of discrimination to establish a *prima facie* case of discrimination, and

that even assuming Plaintiff could establish a *prima facie case*, no reasonable jury could find that

Defendants' legitimate non-discriminatory reasons for firing Plaintiff were pretext. *See generally*

ECF No. 378. Here, the first three prongs of the Plaintiff's *prima facie* case are undisputed in this motion. First, the Plaintiff has established the first element of a *prima facie* case, where the Plaintiff is a "member of a protected class" because she was 58 years old on April 19, 2016 when she was constructively discharged by Defendant Collura.  ECF No. 127 at  ¶¶ 21-27. Second, the Plaintiff has established the second element of a *prima facie* case, where it is undisputed that a reasonable jury could, in fact, find that Plaintiff was "qualified for employment in the position" as a CNA. *Littlejohn*, 795 F.3d at 307. To show 'qualification' sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff need not show perfect performance or even average performance." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (quotation marks omitted). Indeed, "[i]n a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw than in a hiring or promotion case because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified." *Id*. But "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that [s]he satisfies the employer." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001). Here, the Plaintiff was hired as a CNA in April 1992 and served in this role for over 20 years. Collura Aff. at ¶ 9. The fact that she remained in the role for a significant period of time suggests that the Plaintiff was qualified for the position. *Augustin v. Yale Club of New York City,* No. 03–CV–1924 (KMK), 2006 WL 2690289, at *23 (S.D.N.Y. Sep. 15, 2006) ("Due to the fact that Defendant hired, promoted, and retained Plaintiff for a significant period of time, Plaintiff has sufficiently pled the second prong of her prima facie disparate treatment claim, that she was qualified for the position."). Although the Defendants suggest that there were some deficiencies in the Plaintiff's performance, these performance reviews fail to support the claim

that the Plaintiff did not possess the requisite basic skills for his job. Third, the Plaintiff has established the third element of a *prima facie* case, where it is undisputed that her resignation in April 2016 constitutes an adverse employment action. "In the context of a claim for discrimination under the ADEA, 'a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.' " *Visco v. Brentwood Union Free Sch. Dist.*, 991 F. Supp. 2d 426, 436 (E.D.N.Y. 2014) (alteration and some internal quotation marks omitted) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007)). "The Second Circuit has applied this definition broadly to include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Graham v. Watertown City Sch. Dist.*, No. 10-CV-756, 2011 WL 1344149, at *6 (N.D.N.Y. Apr. 8, 2011) (internal quotation marks omitted). Here, the Plaintiff was asked to resign, which is sufficient to satisfy the third prong. ECF No. 127 at ¶ 73.

The Plaintiff, however, cannot establish the fourth factor in a *prima facie case* of age discrimination. As to the fourth *prima facie* factor, "[t]here are a variety of ways in which a plaintiff can demonstrate that the adverse employment action took place under circumstances giving rise to an inference of age discrimination." *Del Valle v. City of New York*, No. 11-CV-8148, 2013 WL 444763, at *4 (S.D.N.Y. Feb. 6, 2013). For example, an inference of age discrimination may be raised where a plaintiff "alleges that she was within the protected class, that she was rejected for a position, and that the position was filled by a person significantly younger than her." *Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *7 (S.D.N.Y. Apr. 30, 2013) ("*Munoz-Nagel I*") (collecting cases). "An age discrimination plaintiff may also seek to rely on ... comments or remarks evidencing ageist views, evidence that similarly situated younger employees are treated more favorably than older ones, or statistical

14

evidence demonstrating a pattern of adverse employment actions taken against older employees." *Del Valle*, 2013 WL 444763, at \*4 (citations omitted).

This Court finds that the Plaintiff did not provide minimal evidence giving rise to an inference that the Hospital acted with discriminatory animus sufficient to establish *a prima facie* case of age discrimination. *Littlejohn*, 795 F.3d at 307. Here, the Plaintiff's own admissions suggest that her termination of employment was not related to her age. ECF No. 378 at 19. During the Plaintiff's first deposition, she was asked whether there are any incidents that she can recall as to how Defendants Brown and Wedderburn treated her unfairly because of her age. ECF No. 378 at 19; *see also* Bromfield First Dep. at 220:6-18 The Plaintiff responded, "Treated me unfairly because of my age. The age is not one, two, three, four age. The age, what I'm talking about, is the length of time I am at the facility. It's not my birth age. It's the length of time I am at the facility." *Id*. Indeed, the Plaintiff's own admissions suggest that her theory of age discrimination is not based on her actual age, but the number of years working at the Hospital. *Id*. at 221:2-12. Furthermore, Plaintiff also testified during her deposition that she believes she was "singled out" because she had been working at the facility longer than others and because she had been previously suspended. *Id*. at 222:9-13. This testimony confirms that the Plaintiff believes that the Defendants discriminated against her because of the number of years she was employed at the Hospital and because of her prior suspensions. *Id*. at 220:2-222:13. "Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). Indeed, Plaintiff failed to articulate any plausible basis for her belief that these actions were motivated by her age, which does not support an inference of age discrimination under the ADEA.

In addition to these admissions, the Plaintiff's age discrimination claims are weakened where the individual defendants are also members of at least one of the same protected classes as the Plaintiff. As many courts have recognized, where the Plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes harassment or discrimination is weakened. *See, e.g., Boston v. Macfadden Publ'g, Inc.,* No. 09 Civ. 457(RJH), 2010 WL 3785541, at *11 (S.D.N.Y. Sept. 29, 2010) ("[T]he decision makers[ ] were well within the protected class at 66 years of age at the time of termination, weakening any inference of discrimination that could be drawn in this case."). Courts routinely conclude that "invidious discrimination is unlikely" when "the person who made the termination decision is in the same protected class as plaintiff." *Zuffante v. Elderplan, Inc.,* No. 02-CV-3250, 2004 WL 744858, at *6 (S.D.N.Y. March 31, 2004); *see also Hossain v. Manhattan Sheraton Corp.*, No. 1:20-CV-3966 (DG)(PK), 2022 U.S. Dist. LEXIS 158694, at *32 (E.D.N.Y. Aug. 31, 2022) ("Further weighing against an inference of age discrimination is the fact that [Defendant]. . . who recommended his termination, was 54 years old at the time of Plaintiff's termination and a member of the same protected class as Plaintiff.").

Here, Defendants Collura, Brown, and Wedderburn met with the Plaintiff on April 19, 2016, during which it became "abundantly clear" to Defendants that the Plaintiff's "disregard of patients' Individual Care Plans and safety policy and protocols could not be tolerated, and that her continued employment could use a serious risk of harm to patients." Collura Aff. at ¶¶ 31-34. Following this discussion, Defendant Collura informed the Plaintiff that her actions necessitated her termination and offered her the opportunity to resign in lieu of termination. *Id*. at ¶ 35. When Plaintiff's employment was terminated, Plaintifff was 58 years old, Defendant Collura was 75 years old, Defendant Wedderburn was 52 years old, and Defendant Brown was 56 years old. *Id*.

at ¶¶ 39-40. Courts within the Second Circuit have found that fact that "the decision makers with regard to plaintiff's firing [] were both over forty years old and thus members of the same protected class as plaintiff weakens any inference that the decision to fire plaintiff was based on his age. *Testa v. CareFusion*, 305 F. Supp. 3d 423, 436 (E.D.N.Y. 2018). These Defendants are clearly members of the same protected class as the Plaintiff, which undermines any inference of age discrimination or discriminatory intent against the Plaintiff where the decision to terminate the Plaintiff was made by a member of the same protected class.

### III.    Title VII and ADEA Retaliation Claims

This Court finds that the Plaintiff has not established a *prima facie* case of retaliation under Title VII and the ADEA. Under Title VII, it is unlawful for an employer to "retaliate" by discriminating against an employee because the employee engaged in a protected activity, that is, "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The ADEA contains a nearly identical provision that bars retaliation for complaints of age-based employment discrimination. 29 U.S.C. § 623(d); *see also Dickens v. Hudson Sheraton Corp.*, *LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), aff'd, 689 F. App'x 670 (2d Cir. 2017). Retaliation claims also follow the *McDonnell Douglas* framework set forth above, whereby the plaintiff must first establish a *prima facie* case of retaliation; the defendant must then articulate a legitimate, non-discriminatory reason for its action; and the plaintiff must then demonstrate that this explanation is mere pretext. *See Jones v. Bernanke,* 557 F.3d 670, 677 (D.C. Cir. 2009).

To establish a *prima facie* case of retaliation, Plaintiff must "offer[ ] evidence that she participated in a protected activity, suffered an adverse employment action, and that there was a

causal connection between her engaging in the protected activity and the adverse employment action." *See Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (quotation marks omitted). In her amended complaint, the Plaintiff argues that she was "singled out" for suspension and terminated because she complained to Executive Director Peter Kennedy and Defendant Brown about short-staffing on her unit and other CNAs' alleged neglect of their duties, as well as about the unfair treatment of older workers, "some of whom have been fired and others who have been forced to retire way before they wanted to." ECF No. 127 at ¶¶ 49-50; *see also* Collura Aff. at ¶ 47; *see also* Collura Aff. Exh. 9.

These retaliation claims fail as a matter of law on three separate grounds. First, the sole complaint that Plaintiff made to the Hospital referencing age was a letter to Executive Director Peter Kennedy, which the Plaintiff submitted after she was suspended and immediately before the meeting on April 19, 2016 with Defendants Collura, Brown, and Wedderburn, at which she resigned. Collura Aff. at ¶ 48. "Whether plaintiff's conduct was protected activity under the ADEA requires satisfaction of three essential elements. First, plaintiff must complain, in some form, about allegedly discriminatory practices. Second, though the complained-of conduct need not be discriminatory as a matter of law, plaintiff must have a good faith, reasonable belief that the practices complained of were unlawfully discriminatory. And third, plaintiff's complaints must be known to defendants. . ." *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 579 (S.D.N.Y. 2010) (internal citations omitted). Here, the Plaintiff has failed to provide evidence that the Defendants knew about the letter at the time of the meeting and acted with the encouragement of someone with knowledge of the Plaintiff's letter to Executive Director Kennedy right before the April 19, 2016 meeting. Nor was Defendant Collura aware of the letter until days following her resignation. Collura Aff. at ¶ 49. Therefore, the complaint regarding age

discrimination does not constitute protected activity under the ADEA because the Defendant was not aware of the letter to Executive Director Kennedy.

Second, the Plaintiff's complaint about short staffing and other CNAs' neglect of duties also does not qualify as "protected activity" because the complaint does not oppose any unlawful discrimination under the Title VII. The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *See* 42 U.S.C. § 2000e-3; *see also Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 134-35 (2d Cir. 1999) (discussing scope of statute's "protected activity" provision), *cert. denied,* 528 U.S. 964 (1999). Title VII does not protect whistleblowers who complain about mismanagement. *See Wimmer,* 176 F.3d at 135 ("Title VII 'is not a general bad acts statute:" ' a claim of retaliation is only cognizable under Title VII if the plaintiff's opposition was directed at an unlawful employment practice of her employer) (quoting *Crowley v. Prince George's County,* 890 F.2d 683, 687 (4th Cir.1989)); *see also Adeniji v. Admin. for Child. Servs.,* 43 F.Supp.2d 407, 421 (S.D.N.Y.1999) ("Title VII does not protect whistle-blowers"); *Jamil v. Secretary, Dep't of Defense,* 910 F.2d 1203, 1207 (4th Cir.1990) (Title VII "only addresses discrimination on the basis of race, sex, religion, and national origin, not discrimination for whistleblowing"); *Simmons v. Shalala,* 946 F.Supp. 415, 420 (D.Md.1996) ("To the extent that plaintiff is claiming that she was retaliated against for being a whistle blower regarding fraud and mismanagement, such a claim is not cognizable under Title VII which only protects against retaliation for claims of discrimination").

Third, the Plaintiff cannot prove that there was a causal connection between her engaging in any protected activity and the adverse employment action. A causal connection is sufficiently demonstrated if the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity acts pursuant to *encouragement* by a superior (who has knowledge)

to disfavor the plaintiff. *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010). The Plaintiff submitted the letter to Executive Director Kennedy's secretary immediately before the April 19, 2019 meeting. ECF No. 378 at 34. Before the April 2016 meeting, however, the Plaintiff was already suspended for two weeks following the March 2016 patient injury incident and the Hospital's subsequent discovery that she had transferred the patient without the required assistance in accordance with Hospital policy. *See* Bromfield First Dep. at 185:9-17; Collura Aff., at ¶ 48. Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001). Indeed, even if this Court were to have find that the letter was a form of protected activity, there is no inference of retaliatory animus where the adverse employment action occurred before the letter was sent to Executive Director Kennedy. Nor can the Plaintiff plausibly prove before a jury that the Defendants asked her to resign because of the letter complaining of age discrimination. Notably, the letter was given to Executive Director Kennedy's secretary only moments before the April 2016 meeting. Therefore, it is implausible to believe that the Defendants had knowledge of this letter at the time of the meeting and that they were retaliating because of the letter when there were other bases for termination.

## IV.    Individual Defendants

Finally, this Court also dismisses the Title VII and ADEA claims against the individual defendants. In *Tomka v. Seiler Corp.*, the Second Circuit held that an employee-supervisor could not be held liable under Title VII if the employer-entity itself is not also liable, because an individual employee does not meet the definition of "employer" in the statutory text of Title VII. 66 F. 3d 1295, 1313–17 (2d Cir. 1995) ("We now hold that individual defendants with

20

supervisory control over a plaintiff may not be held personally liable under Title VII."); *id.* at 1314 ("[I]t was inconceivable that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees." (internal quotation omitted)); *see also Reininger v. New York City Transit Auth.*, No. 11-CV-7245(DAB), 2016 WL 10566629, at *5 (S.D.N.Y. Dec. 22, 2016). The same logic can be applied to Plaintiff's ADEA claims, as the "Supreme Court has held . . . that where an ADEA provision can be traced to a corresponding section of Title VII . . ., courts should construe the provisions consistently." *Milano v. Barnhart*, No. 05 CIV. 6527 KMW DF, 2007 WL 2042954, at *2 (S.D.N.Y. July 12, 2007) (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–56 (1979)). Thus, "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under Title VII or the ADEA." *Storr v. Anderson Sch.*, 919 F.Supp. 144, 148 (S.D.N.Y. 1996); *see also Milano*, 2007 WL 2042954, at *2 ("Because the ADEA should be construed consistently with Title VII, this Court has routinely extended the reasoning in *Tomka* to cases brought against private employers under the ADEA, and has similarly applied this reasoning in ADEA cases against state employers."). Therefore, Plaintiff cannot sue Defendants Collura, Brown, Wedderburn, and Baptiste under Title VII nor the ADEA. These claims are dismissed with prejudice insofar as it is based upon individual liability.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is

**GRANTED**. The Clerk of Court is hereby directed to terminate all open motions and terminate

the case.

**SO ORDERED.**

**Dated:** **March 25, 2025**
       **New York, NY**

_____
       **ANDREW L. CARTER, JR.**
       **United States District Judge**